UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MATTHEW WARD, on behalf of himself individually and on behalf of other similarly situated current or former employees, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 1:17-cv-02557-TWP-MJD<br>) |
| HAT WORLD, INC., | )<br>) |
| Defendant. | ) |

## ORDER ON MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION AND FACILITATE NOTICE

This matter is before the Court on a Motion for Conditional Collective Action Certification and to facilitate notice pursuant to 29 U.S.C. § 216(b) filed by Plaintiff Matthew Ward ("Ward") ([Filing No. 43](#)). Ward previously was employed by Defendant Hat World, Inc. ("Hat World") as a regional loss prevention investigator ("RLPI"). As a salaried employee, he often worked more than forty hours per week, yet Hat World failed to pay him any overtime wages for hours worked in excess of forty hours. Because he was not paid overtime wages, Ward initiated this lawsuit against Hat World under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and under similar state law provisions. He asks the Court to conditionally certify a collective action for the FLSA claim and permit notice to potential plaintiffs who similarly have worked or are working for Hat World as RLPIs and who have not been paid for overtime work. Also before the Court is Ward's Request for Oral Argument on his Motion. ([Filing No. 45](#)) For the following reasons, the Court **grants** Ward's Motion for conditional certification and **denies** the request for a hearing.

## I. BACKGROUND

Hat World is a Minnesota corporation that operates a retail business out of Indianapolis, Indiana. It has more than 1,000 mall-based, airport, street-level, and factory outlet locations throughout the United States and Canada. Hat World operates businesses such as Lids, Lids Locker Room, and Lids Clubhouse, which sell sporting teams' apparel, accessories, novelties, and headwear. Individual stores are organized into districts, and districts are organized into regions. Regional loss prevention investigators work at the regional level ([Filing No. 12 at 5](), 8).

At any given time, Hat World employs approximately sixteen to twenty RLPIs throughout North America. Ward was employed as an RLPI for Hat World from October 2013 to September 2016. His job interview was held in Seattle, Washington and he was interviewed by two individuals based out of Indiana and Ohio. After receiving a job offer, Ward trained with another RLPI in Florida. His initial work assignment as an RLPI covered the region of Alaska, Washington, Oregon, Western Canada, and Northern California ([Filing No. 13 at 1]()–2).

Hat World's "job description" document, describes the typical work that Ward and other RLPIs performed ([Filing No. 13 at 11]()). An RLPI counts inventory at the stores within that RLPI's region, which is tedious, repetitive physical work, involving manually counting every item in a store. An RLPI also conducts investigations regarding lost inventory and performs inspection work to detect losses of assets. RLPIs also report and communicate their findings from their investigations and inspections to management. They provide recommendations and assistance to the stores within their region ([Filing No. 13 at 3]()–6).

Ward regularly worked more than forty hours in a week, but Hat World never compensated him with overtime wages. He has talked with other RLPIs who experienced similar long work hours without overtime compensation. *Id.* at 7. In addition to his own declaration, Ward also

2

provides declarations from John Watson and Adam Heidenreich, who were also RLPIs for Hat World. Their declarations similarly describe their experience of regularly working more than forty hours in a week but not receiving overtime wages. They also affirm that Ward's description of the duties of RLPIs is accurate (Filing No. 14; Filing No. 15).

Hat World describes the role of its RLPIs in this manner:

> The primary function of the RLPI is the effective implementation of Hat World's program for loss prevention and shortage control in the stores assigned to his or her respective Loss Prevention Region ("LP Region").
>
> This function requires RLPIs to analyze inventory results, allocate store Loss Prevention resources to successfully reduce inventory shortage, focus prevention activities on high shortage stores, develop complementary store-specific programs to meet or exceed the store's shortage goals, identify paperwork control weaknesses and implement procedures to correct them, conduct audits for compliance and ensure store follow-up on price accuracy initiatives, review cash discrepancies, identify cash registers with unacceptable shortages, regularly review loss prevention exception reports for signs of dishonesty, interview loss prevention candidates, conduct and supervise training store personnel on loss prevention, provide direction for store personnel that relates to the functional areas of personnel management and human resources, train store personnel regarding emergency procedures, robbery, fire, and other emergencies, guide store management in conducting investigations, training, and addressing shortage related issues, develop store associate awareness and support programs, promote customer approach programs that ensure employees know how to approach customers in a way that is legal and appropriate, determine what internal investigations to pursue and when to conduct interviews, interrogate suspects and obtain confessions, ascertain prosecutable cases, take appropriate legal steps with respect to shoplifters, including apprehensions of suspects and the filing of police reports, select appropriate steps to address the problem of inventory shortage and pursuing the selected course of action by comparing and evaluating possible courses of conduct, and testifying as a witness on behalf of Hat World. RLPIs also consult with and provide expert advice to store management with regard to all of the foregoing.
>
> Earning a minimum weekly salary in excess of $455 per week, RLPIs work independently to audit scores of retail locations within one of 16 assigned LP Regions. RLPIs plan and coordinate their own travel for each store audit and/or investigation, and they communicate all of their itineraries with the stores in their region.
>
> RLPIs provide critical support to the management of Hat World's business, not only in identifying costs attributable to fraud, theft, and/or poor inventory

controls, but also in developing fraud detection solutions to prevent future loss. RLPIs coordinate the timing of audits, investigations and training programs with District Sales Managers ("DSMs") and partner with DSMs to discuss follow up actions necessary to address issues revealed during audits and investigations.

([Filing No. 50 at 3](Filing No. 50 at 3)–5 (citations omitted)).

Hat World provides declarations from Todd Campbell (its director of loss prevention) and Peter Hammer, Jeremy Nerbonne, and Greg Passamonti (RLPIs), who describe the work, role, and authority of Hat World's RLPIs. Their descriptions align with the description noted above ([Filing No. 50-2](Filing No. 50-2); [Filing No. 50-17](Filing No. 50-17); [Filing No. 50-18](Filing No. 50-18); [Filing No. 50-19](Filing No. 50-19)).

Ward contends that Hat World improperly classified him and all other RLPIs as "exempt administrative employees" under the FLSA and failed to pay RLPIs overtime wages for any hours they worked in excess of forty hours in a week. He filed this lawsuit to seek overtime wages for himself and other similarly situated RLPIs who were denied overtime wages by Hat World. Ward asks the Court to conditionally certify his FLSA claim as a collective action.

## II. **LEGAL STANDARD**

Under the FLSA, an employee is permitted to maintain a collective action for "unpaid overtime compensation . . . for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). The "District Court has the discretion to authorize notice to similarly situated employees so that they may opt-in to a class." *Carter v. Indianapolis Power & Light Co.*, 2003 U.S. Dist. LEXIS 23398, at *7 (S.D. Ind. Dec. 23, 2003). "Such a collective action differs significantly from a Rule 23 class action. Potential class members in a collective action must affirmatively *opt-in* to be bound, while in a Rule 23 action they must *opt out* [to] not be bound." *Cheesman v. Nexstar Broad. Grp., Inc.*, 2008 U.S. Dist. LEXIS 42265, at *3 (S.D. Ind. May 27, 2008) (emphasis in original). The standards governing class certification under Rule 23 are not applicable to FLSA collective actions. *Id.* at *5.

4

Courts in the Seventh Circuit engage in a two-step inquiry to determine whether an FLSA action may proceed as a collective action. *Id.* The first step is called the "notice stage" and "involves an analysis of the pleadings and affidavits which have been submitted to determine whether notice should be given to potential class members." *Id.* (quoting *Carter*, 2003 U.S. Dist. LEXIS 23398, at *8). "The second step, which usually occurs after discovery has largely been completed, allows a court the opportunity to determine whether the class should be decertified or restricted because various putative class members are not in fact similarly situated as required by the statute." *Id.*

During the initial "notice stage," a plaintiff does not have to prove his entire case. Rather, the plaintiff must make only a threshold showing that he is similarly situated to the employees on whose behalf he seeks to pursue claims. *Coan v. Nightingale Home Healthcare, Inc.*, 2005 U.S. Dist. LEXIS 15475, at *3 (S.D. Ind. June 29, 2005). This threshold showing is "relatively modest." *Id.* "The modest factual showing required at the first step of the proceedings may be lenient, but it is not a mere formality." *Allen v. Payday Loan Store of Ind., Inc.*, 2013 U.S. Dist. LEXIS 169971, at *4 (N.D. Ind. Dec. 3, 2013) (citation and quotation marks omitted). "[T]o meet their burden, Plaintiffs must provide evidence via an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy." *Id.*

### III. DISCUSSION

Among other things, the FLSA prohibits employers from working their employees more than forty hours in a work week without compensating the employee overtime wages at a rate of at least time and a half for hours worked in excess of forty hours. 29 U.S.C. §§ 207, 215(a)(2). "The FLSA exempts from overtime pay coverage those employed in a 'bona fide executive,

5

administrative, or professional capacity.'" *Mullins v. Target Corp.*, 2011 U.S. Dist. LEXIS 39997, at *10 (N.D. Ill. Apr. 13, 2011) (quoting 29 U.S.C. § 213(a)(1)). The FLSA provides a procedural mechanism whereby employees may litigate a collective action on behalf of similarly situated employees. *See* 29 U.S.C. § 216(b).

Ward asks the Court to conditionally certify a collective action for his FLSA claim because he can meet the lenient, relatively modest threshold showing that he is similarly situated to other RLPIs who were denied overtime wages by Hat World. Ward additionally asks the Court to allow him to provide notice to potential plaintiffs who similarly have worked or are working for Hat World as an RLPI and who have not been paid for overtime work.

In support of his Motion, Ward provides declarations from himself and two other RLPIs, John Watson and Adam Heidenreich. In their declarations, the three former employees describe the tasks they performed, which were consistent with the "job description" document that Hat World gave to its employees (and which is also provided to the Court as additional evidence). The three individuals' work descriptions and experiences are similar, they each regularly worked more than forty hours in a week, and they each were not paid overtime wages. Each of them, like all RLPIs, was classified by Hat World as being exempt from the overtime provision of the FLSA. Ward asserts that this is enough to meet the lenient, relatively modest threshold showing that he is similarly situated to other RLPIs who were denied overtime wages by Hat World. And thus, he asserts, his claim should be certified as a collective action.

In response to the Motion, Hat World argues that it properly classified its RLPIs as exempt under the FLSA overtime provision, so there is no unlawful common practice or policy suffered by similarly situated employees to allow a collective action in this case. Hat World's declarations provide a detailed description of the day-to-day work performed by RLPIs and the discretion that

6

they must exercise when performing their duties. The declarations also provide an explanation of some of the variations in work performed by the RLPIs based on the stores that they inspect. Hat World argues that a collective action is improper because of these variations and because it has properly classified its RLPIs as exempt employees. Hat World also very briefly argues that the scope of Ward's proposed class is too broad, and his proposed notice to the class is insufficient in various ways.

Both parties spend significant portions of their briefs describing the "administrative exemption" to the FLSA, pointing to case law, federal regulations, and U.S. Department of Labor opinion letters, and arguing their position on whether the administrative exemption should apply. The Court notes that these arguments concern the merits of Ward's claim against Hat World and do not resolve the issue of similarly situated employees and conditional certification of a collective action. Ward tends to downplay the job responsibilities of RLPIs in an effort to avoid application of the administrative exemption. Conversely, Hat World tends to amplify the job responsibilities of RLPIs to show that the administrative exemption should apply. However, these arguments go to the merits of the claim, not to the similarity (or dissimilarity) of Ward to other potential plaintiffs.

As another court in this District noted, "A plaintiff need not provide conclusive support for their similarly situated argument, but instead merely an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy." *William v. Angie's List, Inc.*, 223 F. Supp. 3d 779, 783 (S.D. Ind. 2016) (citation and quotation marks omitted).

The declarations that the parties submitted illustrate the similarities among all of Hat World's RLPIs. While Hat World's declarations provide greater detail and an alleged greater

authority held by RLPIs than Ward's declarations, each of the declarations show similar job responsibilities and working conditions at their core among the RLPIs. Additionally, the declarations provided by Hat World actually confirm that RLPIs worked more than forty hours in a week (and sometimes less than forty hours) and were not compensated with overtime wages.

The arguments advanced by each party and the evidence offered in support show that RLPIs employed by Hat World have similar job responsibilities, are subject to similar company policies and practices, and are paid under a similar compensation structure. Additionally, there appears to be no dispute that all RLPIs have been similarly classified by Hat World as "exempt" employees. Whether that "exempt" classification is actually appropriate is at the heart of the parties' dispute and is a merits question. It appears that Ward and the potential plaintiffs are similarly situated employees who were subject to a common policy, plan, or practice. The issue to be resolved later on the merits is whether that common policy, plan, or practice violated the law. Therefore, the Court concludes that Ward has met his burden of making a modest factual showing that he is similarly situated to the potential plaintiffs to conditionally certify a collective action against Hat World.

Hat World very briefly argues that a collective action would be difficult to manage because of differences in damages and hours worked among potential plaintiffs. However, those differences do not affect the propriety of conditional certification at this stage of the collective action. The Court also determines that Hat World's arguments concerning the scope of the class and the sufficiency of the proposed notice are without merit.

# IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Ward's Motion (Filing No. 43) and conditionally certifies the FLSA claim as a collective action for the following class:

> All Regional Loss Prevention Investigators who are working or have worked for Hat World, Inc. at any time in the past three years and during their employment worked, at any time, in excess of 40 hours in a given week.

The Court **ORDERS** Hat World to produce the names, home addresses, home telephone numbers, cellular telephone numbers, email addresses, and dates of employment (the "Employee Information") of all current and former regional loss prevention investigators who are or were employed by Hat World during the three-year period prior to the date of this Order. Hat World is **ORDERED** to provide the Employee Information in a usable electronic format to counsel for Ward within **fourteen (14) days** from the entry of this Order.

The Court authorizes that the proposed "Notice of Right to Join Lawsuit" and corresponding "Consent to Join" form submitted by Ward at Filing No. 52-1 at 4–7 and Filing No. 52-1 at 8 may be issued to those individuals whose names are provided by Hat World as required by this Order. The Notice shall be mailed within **seven (7) days** after Hat World provides the Employee Information. The "Consent to Join" form shall be enclosed with the Notice, along with a self-addressed, postage paid return envelope. Ward is permitted to send subsequent mailings of this Notice. The Notice and Consent forms shall be mailed by first-class mail or overnight delivery.

The potential plaintiffs shall have **sixty (60) days** after the deadline for mailing of the Notice of Right to Join Lawsuit to return a Consent to Join form to opt-in to this litigation, unless the parties agree to permit late filings or good cause can be shown as to why the form was not returned prior to the deadline.

Ward's Request for Oral Argument on His Motion for Conditional Collective Action Certification ([Filing No. 45](Filing No. 45)) is **DENIED as moot**.

The Court notes that Attorneys Scott McKay, Curt Hineline, and James Morrison are not registered for electronic filing in this district despite having been ordered to do so (See [Filing No. 28](Filing No. 28)). The Clerk of Court is not required to mail hard copies to the unregistered attorneys.

**SO ORDERED.**

Date: 11/29/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Service will be made electronically on all ECF-registered counsel of record via email generated by the Court' ECF system