**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| MATTHEW WARD, on behalf of himself individually and on behalf of other similarly situated current or former employees, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:17-cv-02557-JRS-MJD |
| HAT WORLD, INC., a Minnesota corporation, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**HAT WORLD'S MOTION FOR SUMMARY JUDGMENT**

Joel Griswold
John C. McIlwee
Bonnie Keane DelGobbo
Baker & Hostetler LLP
191 N. Wacker Dr., Suite 3100
Chicago, IL 60606-1901
T: (312) 416-6200
F: (312) 416-6201
jcgriswold@bakerlaw.com
jmcilwee@bakerlaw.com
bdelgobbo@bakerlaw.com

# TABLE OF CONTENTS

**Page**

I.    Introduction .................................................................................................1

II.   Statement of Material Facts Not In Dispute .......................................................2

      A.   Hat World..............................................................................................2

      B.   Loss Prevention Division and the RLPI...................................................2

      C.   The State of Washington Also Comments On Proper RLPI Classification...........10

III.  Argument ...................................................................................................10

      A.   Summary Judgment Standard ...............................................................10

      B.   RLPIs Satisfy The Administrative Exemption Under The FLSA .........................11

      C.   RLPIs Satisfy The Administrative Exemption Under The State Of
           Washington Minimum Wage Act ("MWA")..........................................20

IV.   Conclusion ................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................10

*Blanchar v. Standard Ins. Co.*,
736 F.3d 753 (7th Cir. 2013) ...........................................................................12, 15

*Bradford v. CVS Pharmacy, Inc.*,
No. 12-cv-1159, 2016 WL 6462053 (N.D. Ga. Nov. 1, 2016) .........................13, 16

*Inniss v. Tandy Corp.*,
141 Wash. 2d 517 (2000).........................................................................................20

*Juback v. Radioshack Corp.*,
No. 08-cv-768, 2009 WL 1259990 (M.D. Fla. May 6, 2009) ...........................13, 16

*Lutz v. Huntington Bancshares, Inc.*,
815 F.3d 988 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 96.....................................18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)..................................................................................................11

*Mullins v. Target Corp.*,
No. 09-cv-7573, 2011 WL 1399262 (N.D. Ill. Apr. 13, 2011)...................... *passim*

*Roe-Midgett v. CC Servs., Inc.*,
No. 04-cv- 4051 DRH, 2006 WL 839443 (S.D. Ill. Mar. 29, 2006),
*aff'd*, 512 F.3d 865 (7th Cir. 2008)..............................................................12, 15, 18

*Schaefer-LaRose v. Eli Lilly & Co.*,
679 F.3d 560 (7th Cir. 2012) ...........................................................................12, 15

*Verkuilen v. Mediabank, LLC*,
No. 09 C 3527, 2010 WL 3003860 (N.D. Ill. July 27, 2010)..................................15

**Statutes**

29 U.S.C. § 213...........................................................................................................11

Wash. Admin. Code § 296-128-520 ............................................................................20

Wash. Rev. Code § 49.46.010(3)(c) ............................................................................20

**Rules**

Fed. R. Civ. P. 56 ..................................................................................................................9

**Other Authorities**

29 C.F.R. § 541.200 ......................................................................................................11, 12

29 C.F.R. § 541.201(b) ......................................................................................................14

29 C.F.R. § 541.202 ...........................................................................................................15

29 C.F.R. § 541.202(a) .......................................................................................................15

29 C.F.R. § 541.202(c) .......................................................................................................15

29 C.F.R. § 541.602 ...........................................................................................................11

29 C.F.R. § 541.704 ...........................................................................................................18

U. S. Department of Labor Wage & Hour Division Opinion Letter FLSA2006-30,
    2006 WL 2792444, at *3 (Sept. 8, 2006) ....................................................................14

I.    **Introduction**

This FLSA misclassification case never should have been filed. Plaintiffs are former Regional Loss Prevention Investigators for Hat World, Inc., each of whom was responsible for preventing losses throughout regions that included anywhere from 65 to 105 stores. In so doing, it is undisputed that they analyzed inventory results, allocated loss prevention resources to successfully reduce inventory shortage, focused prevention activities on high shortage stores, developed complementary store-specific programs to meet or exceed the store's shortage goals, identified paperwork control weaknesses and implemented procedures to correct them, conducted audits for compliance and ensured store follow-up on price accuracy initiatives, reviewed cash discrepancies, identified cash registers with unacceptable shortages, regularly reviewed loss prevention exception reports for signs of dishonesty, recommended loss prevention candidates for employment, conducted and supervised training store personnel on loss prevention, provided direction for store personnel that relates to the functional areas of personnel management and human resources, audited store personnel regarding safety protocols, guided store management in conducting investigations, training, and addressing shortage related issues, developed store associate awareness and support programs, promoted customer approach programs that ensure employees know how to approach customers in a way that is legal and appropriate, determined what internal investigations to pursue and when to conduct interviews, interrogated suspects and obtained confessions, ascertained prosecutable cases, took appropriate legal steps with respect to shoplifters, including apprehensions of suspects and the filing of police reports, selected appropriate steps to address the problem of inventory shortage and pursued the selected course of action by comparing and evaluating possible courses of conduct, and testified as a witness on behalf of Hat World. Moreover, the Plaintiffs worked independently to plan and coordinate their

own travel for each store audit and/or investigation, and they communicated all of their itineraries with the stores in their region. These facts are undisputed.

The U.S. Department of Labor and courts addressing the exemption of loss prevention employees have explained in no uncertain terms that such loss prevention employees are properly classified as exempt under the administrative exemption. Indeed, before this case was filed, the State of Washington Department of Labor & Industry rejected Plaintiff Matthew Ward's misclassification claim – and issued to Hat World a Determination of Compliance.

The record is undisputed and based on Plaintiffs' admissions made during their depositions and in their resumes. The law concerning the FLSA classification of such loss prevention employees is clear. Summary judgment should be entered against Plaintiffs and the case dismissed with prejudice.

## II.   Statement of Material Facts Not In Dispute

### A.   Hat World

Hat World operates more than 1,000 mall-based, airport, street-level, and factory outlet stores.[1] At these stores, Hat World sells a variety of team-sports and fashion apparel, accessories, novelties, and headwear.[2]

### B.   Loss Prevention Division and the RLPI

To protect against theft of assets at its retail locations and to minimize lost revenue from theft, Hat World has a business group dedicated to loss prevention.[3] This group employs 10-16

---

[1] ECF No. 109-1 at 2 (Campbell Decl. ¶ 4).

[2] ECF No. 109-15 at 42 (Ward Dep. at p. 94, lines 1-17).

[3] ECF No. 109-1 at 2 (Campbell Decl. ¶ 5).

Regional Loss Prevention Investigators ("RLPI(s)") at any given time,[4] each of whom has between 65-105 stores in his or her respective region.[5] Plaintiffs are former RLPIs.[6]

RLPIs are employed on a salary basis and are paid in excess of $455 a week, regardless of the number of hours they work.[7] They are not employed to sell goods at retail, but rather, to support the retail business by preventing shrink and accounting for shrink.[8]

> Q: Your role as an RLPI was to support the business overall?
>
> A: Correct.
>
> Q: And some of the things that you did to support the business was taking steps to detect theft that was going on?
>
> A: Yes.
>
> Q: And prevent future theft from happening?
>
> A: That was the goal, yes.
>
> Q: One of your -- one of you responsibilities as an RLPI was helping to identify and reduce shrink issues for stores?
>
> A: Yes.
>
> Q: And on the operational side, make sure that the stores were complying with all the company's policies about recordkeeping?
>
> A: Correct, yes.
>
> Q: And some of the job that you've been describing to me involved -- it sounds like quite a bit of analyzing data, whether it's through the

---

[4] ECF No. 109-1 at 3 (Campbell Decl. ¶ 7).

[5] ECF No. 109-17 at 21-22 (Watson Dep. at p. 31 line 23 – p. 32 line 10); ECF No. 109-8 at 20-21 (Marshall Dep. at p. 68 line 23 – p. 69 line 4).

[6] ECF No. 1-2 at 2, ¶ 2.1 (Ward); ECF No. 63 at 1 (Wagner); ECF No. 65 at 1 (Heidenreich); ECF No. 66 at 1 (Watson); ECF No. 69 at 1 (Marshall); ECF No. 71 at 1 (Miller).

[7] ECF No. 109-6 at 37-38 (Heidenreich Dep. at p. 55 line 14 – p. 56 line 4); ECF No. 109-8 at 13 (Marshall Dep. at p. 60, lines 1-25); *id.* at 23 (Marshall Dep. at p. 71, lines 10-15); ECF No. 109-10 at 14 (Miller Dep. at p. 18, lines 2-4); ECF No. 109-13 at 13-14 (Wagner Dep. at p. 19 line 18 – p. 20 line 8); ECF No. 109-15 at 41 (Ward Dep. at p. 93, lines 17-22); ECF No. 109-17 at 20 (Watson Dep. at p. 30, lines 11-13).

[8] ECF No. 109-8 at 103 (Marshall Dep. at p. 196, lines 5-14); ECF No. 109-17 at 57-58 (Watson Dep. at p. 79 line 11 – p. 80 line 5).

reporting or whether information you're gathering while you're in the store; right?

A: Yes.

Q: And part of what you would be looking for as an RLPI would be to help identify threats to the store's inventory?

A: Yes.

Q: And all of those services that you were performing for Hat World as an RLPI, Hat World didn't sell your services to the general public; right?

A: Correct.[9]

The primary function of the RLPI is loss prevention and shortage control in his or her respective region.[10] This function requires RLPIs to analyze inventory results,[11] allocate loss prevention resources to successfully reduce inventory shortage,[12] focus prevention activities on high shortage stores,[13] develop complementary store-specific programs to meet or exceed the store's shortage goals,[14] identify paperwork control weaknesses and implement procedures to

---

[9] ECF No. 109-6 at 44-45 (Heidenreich Dep. at p. 62 line 15 – p. 63 line 23); *see also,* ECF No. 109-17 at 58 (Watson Dep. at p. 80, lines 7-10).

[10] ECF No. 109-1 at 3-4 (Campbell Decl. ¶ 8); ECF No. 109-2 at 4 (Hammer Decl. ¶ 9); ECF No. 109-3 at 4 (Nerbonne Decl. ¶ 9); ECF No. 109-4 at 4 (Passamonti Decl. ¶ 9); ECF No. 109-17 at 21-22 (Watson Dep. at p. 31 line 23 – p. 32 line 10); ECF No. 109-8 at 20-21 (Marshall Dep. at p. 68 line 23 – p. 69 line 4).

[11] ECF No. 109-6 at 45 (Heidenreich Dep. at p. 63, lines 10-19); ECF No. 109-8 at 62 (Marshall Dep. at p. 137, lines 5-25); ECF No. 109-10 at 37 (Miller Dep. at p. 56, lines 18-23); ECF No. 109-15 at 43 (Ward Dep. at p. 95, lines 14-16); ECF No. 109-17 at 28 (Watson Dep. at p. 45, lines 11-22); ECF No. 109-2 at 6 (Hammer Decl. ¶ 11(A)); ECF No. 109-3 at 5 (Nerbonne Decl. ¶ 11(A)); ECF No. 109-4 at 6 (Passamonti Decl. ¶ 11(B)).

[12] ECF No. Miller Dep 55:22-56:23; ECF No. 109-8 at 6 (Marshall Dep. at p. 24, lines 13-21); ECF No. 109-17 at 65 (Watson Dep. at p. 105, lines 8-22); ECF No. 109-13 at 32-33 (Wagner Dep. at p. 61 line 22 – p. 62 line 5); ECF No. 109-2 at 12 (Hammer Decl ¶ 11(R)); ECF No. 109-3 at 10 (Nerbonne Decl. ¶ 11(N)).

[13] ECF No. 109-6 at 82 (Heidenreich Dep. at p. 119, lines 9-21); ECF No. 109-8 at 100 (Marshall Dep. at p. 193, lines 7-11); ECF No. 109-10 at 29-30 (Miller Dep. at p. 46 line 18 – p. 47 line 25); ECF No. 109-15 at 57 (Ward Dep. at p. 133, lines 10-22); ECF No. 109-13 at 32-33 (Wagner Dep. at p. 61 line 22 – p. 62 line 5); ECF No. 109-17 at 15 (Watson Dep. at p. 25, lines 5-23).

[14] ECF No. 109-13 at 25 (Wagner Dep. at p. 34, lines 8-23); ECF No. 109-2 at 10-11 (Hammer Decl. ¶ 11(N)); ECF No. 109-4 at 10 (Passamonti Decl. ¶ 11(O)).

correct them,[15] conduct audits for compliance[16] and ensure store follow-up on price accuracy initiatives,[17] review cash discrepancies,[18] identify cash registers with unacceptable shortages,[19] regularly review loss prevention exception reports for signs of dishonesty,[20] recommend loss prevention candidates for employment,[21] conduct and supervise training store personnel on loss prevention,[22] provide direction for store personnel that relates to the functional areas of personnel management and human resources,[23] audit store personnel regarding safety protocols,[24] guide store management in conducting investigations, training, and addressing shortage related issues,[25] develop store associate awareness and support programs,[26] promote customer approach programs

---

[15] ECF No. 109-6 at 48-49 (Heidenreich Dep. at p. 66 line 15 – p. 67 line 2); ECF No. 109-10 at 56-57 (Miller Dep. at p. 80 line 24 – p. 81 line 16); ECF No. 109-13 at 39-40 (Wagner Dep. at p. 73 line 23 – p. 74 line 16); ECF No. Watson Dep 45:23-46:8; *id.* at 100:2:8; ECF No. 109-2 at 9-10 (Hammer Decl. ¶ 11(K)).

[16] ECF No. 109-6 at 31-32 (Heidenreich Dep. at p. 49 line 18 – p. 50 line 19); ECF No. 109-8 at 78-79 (Marshall Dep. at p. 156 line 15 – p. 157 line 1); ECF No.109-15 at 83 (Ward Dep. at p. 171, lines 5-18).

[17] ECF No. 109-13 at 60-61 (Wagner Dep. at p. 94 line 11 – p. 95 line 2); ECF No. 109-15 at 90 (Ward Dep. at p. 180, lines 2-21); ECF No. 109-4 at 10 (Passamonti Decl. ¶ 11(N)).

[18] ECF No. 109-15 at 76-77 (Ward Dep. at p. 158 line 16 – p. 159 line 8); ECF No. 109-17 at 18 (Watson Dep. at p. 28, lines 11-20); ECF No. 109-4 at 10 (Passamonti Decl. ¶ 11(L)).

[19] ECF No. 109-6 at 50 (Heidenreich Dep. at p. 68, lines 4-14); ECF No. 109-8 at 69-70 (Marshall Dep. at p. 147 line 7 – p. 148 line 11); ECF No. 109-15 at 34 (Ward Dep. at p. 74, lines 11-18).

[20] ECF No. 109-5 at 13 (Hammer Dep. at p. 17, lines 1-15); ECF No. 109-6 at 61 (Heidenreich Dep. at p. 79, lines 12-15); ECF No.109-8 at 61-62 (Marshall Dep. at p. 136 line 23 – p. 137 line 25); ECF No. 109-10 at 42 (Miller Dep. at p. 61, lines 8-20); ECF No. 109-13 at 24-25 (Wagner Dep. at p. 33 line 15 –p. 34 line 7); ECF No. 109-17 at 18 (Watson Dep. at p. 28, lines 2-20); ECF No. 109-2 at 7-8 (Hammer Decl. ¶ 11(E)).

[21] ECF No. 109-8 at 45-46 (Marshall Dep. at p. 107 line 8 – p. 108 line 21); ECF No. 109-13 at 73-74 (Wagner Dep. at p. 109 line 17 – p. 110 line 19); ECF No. 109-17 72 (Watson Dep. at p. 149, lines 12-20).

[22] ECF No. 109-6 at 47 (Heidenreich Dep. at p. 65, lines 1-24); ECF No. 109-10 at 88 (Miller Dep. at p. 123, lines 7-19); ECF No. 109-12 at 6-7 (Passamonti Dep. at p. 32 line 13 – p. 33 line 4); *id.* at 9-10 (Passamonti Dep. at p. 35 line 25 – p. 36 line 8); ECF No. 109-4 at 5-6 (Passamonti Decl. ¶ 11(A)).

[23] ECF No. 109-8 at 72-73 (Marshall Dep. at p. 150 line 1 – p. 151 line 9); ECF No. Ward Dep 97:9-16; ECF No. 109-2 at 11-12 (Hammer Decl. ¶ 11(Q)).

[24] ECF No. 109-10 at 81 (Miller Dep. 112, lines 2-5); ECF No. 109-3 at 10 (Nerbonne Decl. ¶ 11(M)).

[25] ECF No. 109-6 at 35 (Heidenreich Dep. at p. 53, lines 5-23); ECF No. 109-5 at 20-21 (Hammer Dep. at p. 75 line 14 – p. 76 line 10); ECF No. 109-8 at 6 (Marshall Dep. at p. 24, lines 13-21); ECF No. 109-4 at 11 (Passamonti Decl. ¶ 11(P)).

[26] ECF No. 109-6 at 47 (Heidenreich Dep. at p. 65, lines 1-7); ECF No. 109-12 at 12-13 (Passamonti Dep. at p. 38 line 5 – p. 39 line 13).

that ensure employees know how to approach customers in a way that is legal and appropriate,[27] determine what internal investigations to pursue and when to conduct interviews,[28] interrogate suspects and obtain confessions,[29] ascertain prosecutable cases,[30] take appropriate legal steps with respect to shoplifters, including apprehensions of suspects and the filing of police reports, select appropriate steps to address the problem of inventory shortage and pursuing the selected course of action by comparing and evaluating possible courses of conduct,[31] and testify as a witness on behalf of Hat World.[32] RLPIs work independently to plan and coordinate their own travel for each store audit and/or investigation, and they communicate all of their itineraries with the stores in their region.[33]

Hat World expects each RLPI to excel in seven key performance areas: (1) shrink as a percentage of sales for the assigned region; (2) individual resolve case value ("IRCV"); (3) regional resolve case value ("RRCV"); (4) cost per event; (5) completion of a minimum of 2.2 audits per week; (6) refund no customer alert resolutions; and (7) completion of loss prevention

---

[27] ECF No. 109-6 at 84-85 (Heidenreich Dep. at p. 121 line 12 – p. 122 line 5); ECF No. 109-8 at 38-39 (Marshall Dep. at p. 100 line 7 – p. 101 line 14); ECF No. 109-3 at 10 (Nerbonne Decl. ¶ 11(K)).

[28] ECF No. 109-6 at 7 (Heidenreich Dep. at p. 22, lines 5-24); ECF No. 109-8 at 62-63 (Marshall Dep. at p. 137 line 11 – p. 138 line 7); ECF No. 109-13 at 48 (Wagner Dep. at p. 82, lines 6-19); ECF No. 109-2 at 6 (Hammer Decl. ¶ 11(B)); ECF No. 109-3 at 6 (Nerbonne Decl. ¶ 11(B)).

[29] ECF No. 109-6 at 10 (Heidenreich Dep. at p. 25, lines 10-16); ECF No. 109-10 at 74-75 (Miller Dep. at p. 98 line 17 – p. 99 line 16); ECF No. 109-13 at 48-49 (Wagner Dep. at p. 82 line 25 – p. 83 line 12); ECF No. 109-15 at 50-51 (Ward Dep. at p. 102 line 24 – p. 103 line 6); *id.* at 51 (Ward Dep. at p. 103, lines 13-17); ECF No. 109-17 at 50 (Watson Dep. at p. 72:10-25); *id* at 52-53 (Watson Dep. at p. 74 line 2 – p. 76 line 3).

[30] ECF No. 109-10 at 61 (Miller Dep. at p. 85, lines 9-22); ECF No. 109-13 at 66-67 (Wagner Dep. at p. 100 line 17 – p. 101 line 3); ECF No. 109-15 at 104-105 (Ward Dep. at p. 281 line 24 – p. 282 line 11).

[31] ECF No. 109-6 at 91 (Heidenreich Dep. at p. 136, lines 6-10); ECF No. 109-8 at 29 (Marshall Dep. at p. 89, lines 11-22); *id.* at 53-54 (Marshall Dep. at p. 128 line 18 – p. 129 line 22); ECF No. 109-10 at 21-22 (Miller Dep. at p. 31 line 13 – p. 32 line 17); *id.* 94:10-14; ECF No. 109-17 at 30-31 (Watson Dep. at p. 47 line 19 – p. 48 line 16); *id* at 32 (Watson Dep. at p. 49, lines 2-9); *id.* at 46-47 (Watson Dep. at p. 68 line 22 – p. 69 line 4); ECF No. 109-3 at 8 (Nerbonne Decl. ¶ 11(F)).

[32] ECF No. 109-10 at 13 (Miller Dep. at p. 17, lines 14-21); ECF No. 109-17 at 75 (Watson Dep. at p. 152, lines 7-13); ECF No. 109-2 at 9 (Hammer Decl. ¶ 11(J)); ECF No. 109-3 at 11 (Nerbonne Decl. ¶ 11(O)).

[33] ECF No. 109-1 at 4 (Campbell Decl. ¶ 9); ECF No. 109-6 at 24-25 (Heidenreich Dep. at p. 42 line 11 – p. 43 line 9); ECF No. 109-8 at 111 (Marshall Dep. at p. 219, lines 4-11); ECF No. 109-15 at 27 (Ward Dep. at p. 65, lines 6-20).

workshop.[34] Of all criteria on which RLPI performance is judged, IRCV is "king."[35] IRCV is the metric that shows the percentage of internal losses that the RLPI resolves as an individual.[36] Being able to resolve shortage individually means "being able to explain specifically who took what, when, where, how and wh[y]."[37] RLPIs are charged not just to report on what is missing, but also to figure out why it is missing.[38] On this point RLPI Miller states:

> So if he wants me to try to account for all the dollars, that's what I do on a daily basis. That's what I use all of these different tools and all of the facts that are found during an inventory afterwards during my analytics review, interviews. They're all ways to generate information to come to a conclusion.[39]

Hat World also expects RLPIs to demonstrate competencies for the position: building trust, communication, contributing to team success, customer focus, decision-making, managing work, and adaptability.[40] For self-evaluations, RLPIs Wagner and Marshall graded themselves as proficient, highly proficient or exceptional at demonstrating such competencies.[41] RLPI Ward rated himself as proficient in decision-making, which is defined as "[i]dentifying and understanding issues, problems and opportunities, comparing data from different sources to draw conclusions; using effective approaches for choosing a course of action or developing appropriate solutions; taking action that is consistent with available facts, constraints, and probable

---

[34] ECF No. 109-13 at 16 (Wagner Dep. at p. 22, lines 13-18); ECF No. 109-14 at 8-12 (Wagner Dep. Ex. 8).

[35] ECF No. 109-8 at 92 (Marshall Dep. at p. 184, lines 4-7).

[36] ECF No. 109-8 at 37-38 (Marshall Dep. at p. 99 line 22 – p. 100 line 6).

[37] ECF No. 109-10 at 63-64 (Miller Dep. at p. 87 line 22 – p. 88 line 10).

[38] ECF No. 109-10 at 67 (Miller Dep. at p. 91, lines 1-14).

[39] ECF No. 109-10 at 70 (Miller Dep. at p. 94, lines 1-14).

[40] ECF No. 109-13 at 16 (Wagner Dep. at p. 22, lines 13-18); ECF No. 109-14 at 13-18 (Wagner Dep. Ex. 8).

[41] ECF No. 109-8 at 85 (Marshall Dep. at p. 177, lines 15-19); ECF No. 109-13 at 16 (Wagner Dep. at p. 22, lines 13-18); ECF No. 109-14 at 13-18 (Wagner Dep. Ex. 8).

consequences." [42] RLPI Heidenreich ranked himself as "above average" in judgment, which is defined as capacity to make decisions based on facts, policies, and procedures.[43] When RLPIs did not meet expectations, as Heidenreich and Miller experienced, they received written warnings.[44]

Named Plaintiff, RLPI Ward, uses LinkedIn to describe his professional experience at Hat World,[45] listing only his "primary," "major," and "most important" duties that he performed.[46] As of December 2017, RLPI Ward described the duties he performed as a RLPI as follows:

- Led internal/external investigations of fraud, theft, and policy violations, which resulted in a 40% shrink reduction over three years.
- Recognized by Senior Management for the Largest Shrink Reduction by Region, 2015.
- Provide loss prevention leadership, management training, and development of 8 district managers and 107 stores on the west coast.
- Conducted weekly and monthly store operational audits.
- Responsible for maintaining p&l goals, shrink reduction, interviewing sales support, and driving total region results.
- Prepares and submits audit/inventory findings and makes recommendations to field operation executives to enhance store profitability.
- Presented and walked cases through the court system.
- Monitored the department's contribution to total store shortage reduction and prevention programs.
- Advised security team and conducted investigations of significant threats and the loss or misappropriation of assets.
- Monitored and evaluated unit performance on key security issues, recommending corrective action programs where appropriate.
- Created procedures for identifying and tracking fraudulent activity using XBR Software.[47]

---

[42] ECF No. 109-15 at 69 (Ward Dep. at p. 148, lines 6-23); ECF No. 109-16 at 21 (Ward Dep. Ex. 3).

[43] ECF No. 109-6 at 55 (Heidenreich Dep. at p. 73, lines 7-11); ECF No. 109-7 at 7 (Heidenreich Dep. Ex. 5).

[44] ECF No. 109-6 at 75-77 (Heidenreich Dep. at p. 101 line 16 – p. 103 line 13); ECF No. 109-7 at 11-13 (Heidenreich Dep. Ex. 9); ECF No. 109-10 at 39-40 (Miller Dep. at p. 58 line 18 – 59 line 3); ECF No. 109-11 at 7-8 (Miller Dep. Ex. 10).

[45] ECF No. 109-15 at 6 (Ward Dep. at p. 18, lines 7-17); *id.* at 20 (Ward Dep. at p. 56, lines 2-5).

[46] ECF No. 109-15 at 6-7 (Ward Dep. at p. 18 line 21 – p. 19 line 8).

[47] ECF No. 109-15 at 111 (Ward Dep. at p. 303, lines 4-9); ECF No. 109-16 at 37-40 (Ward Dep. Ex. 33).

During this litigation, RLPI Ward deleted the foregoing description of the primary duties he performed as a RLPI at Hat World, and wrote a new description.[48] In this altered version, Ward replaced his prior description of the primary duties he performed with the following:

- physically counted hats at 107 assigned stores. One hat at a time one store at a time.
- recount hats that I just counted to ensure none were missed during initial counting.
- Notify Director of missing hats and single store shrink report and wait for further instruction.
- attempt to locate missing hats or gain reimbursement for theft.[49]

RLPI Ward was not seeking employment at the time he altered this evidence.[50]  This altered document is the only version that RLPI Ward produced to Hat World in Discovery.[51]

Opt-in Plaintiffs also produced their experiences at Hat World on LinkedIn or other forms of resumes.[52] RLPI Watson even has a personal endorsement from his former co-worker and mentee at Hat World, stating:

> John is not only a great RLPI partner but also a good friend. Since first meeting him in 2014 I have learned a great deal. He has taken the time to develop my skills as an RLPI as well as our whole team. His ability to teach and take LP concepts and apply them to his regions is impeccable. The true quality of a leader is to develop and maintain relationships and John is one of the best leaders I have had the privilege to work with. He is a true partner and asset in the Loss Prevention industry.[53]

---

[48] ECF No. 109-15 at 111 (Ward Dep. at p. 303, lines 14-22).

[49] ECF No. 109-15 at 6 (Ward Dep. at p. 18, lines 4-17); ECF No. 109-16 at 2-4 (Ward Dep. Ex. 2).

[50] ECF No. 109-15 at 13 (Ward Dep. at p. 47, lines 7-9).

[51] ECF No. 109-15 at 6 (Ward Dep. at p. 18, lines 9-17).

[52] ECF No. 109-6 at 38-39 (Heidenreich Dep. at p. 56 line 8 – p. 57 line 17); ECF No. 109-7 at 2-5 (Heidenreich Dep. Ex. 2); ECF No. 109-8 at 57-58 (Marshall Dep. at p. 132 line 15 – p. 133 line 17); ECF No. 109-9 at 2-4 (Marshall Dep. Ex. 1); ECF No. 109-10 at 7 (Miller Dep. at p. 7, lines 1-20); ECF No. 109-11 at 2-4 (Miller Dep. Ex. 1); ECF No. 109-13 at 6-7 (Wagner Dep. at p. 11 line 20 – p. 12 line 1); ECF No. 109-14 at 2-3 (Wagner Dep. Ex. 2); ECF No. 109-17 at 10 (Watson Dep. at p. 20, lines 1-10); ECF No. 109-18 at 2-5 (Watson Dep. Ex. 2).

[53] ECF No. 109-17 at 10 (Watson Dep. at p. 20, lines 1-10); ECF No. 109-18 at 2-5 (Watson Dep. Ex. 2).

Commenting on the RLPI position, Todd Campbell, Loss Prevention Director, states: "In more than 25 years of retail experience, I have never encountered as unique, judgment-oriented, independent, skill driven, focused, and impactful position as I have with the RLPI position.[54] Reflecting on his time as an RLPI, Greg Passamonti states: "Hat World relies heavily upon my discretion and independent judgement to identify issues, to choose the appropriate course of action in resolving the issue, and to recommend go-forward strategies for prevention and control."[55]

### C.    The State of Washington Also Comments On Proper RLPI Classification.

On April 28, 2017, the State of Washington, Department of Labor & Industries, conducted an independent review of RLPI Ward's exempt status.[56] The Department reviewed the documents provided by RLPI Ward and Hat World and found "that Mr. Ward meets the requirements to be classified as an exempt employee under the administrative exemption. It is the Department's finding that the company that Hat World Inc. dba Lids did not violate the Washington State wage payment law concerning Matthew Ward for the period of time specified above."[57]

## III.    Argument

### A.    Summary Judgment Standard

Summary judgment must be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Where the record taken as a whole could not lead a rational trier

---

[54] ECF No. 109-1 at 3-4 (Campbell Decl. ¶ 8).

[55] ECF No. 109-4 at 12 (Passamonti Decl. ¶ 13).

[56] ECF No. 109-19 at 2-5 (State of Washington, Department of Labor & Industries' Determination of Compliance, dated April 28, 2017).

[57] ECF No. 109-19 at 2-5 (State of Washington, Department of Labor & Industries' Determination of Compliance, dated April 28, 2017).

of fact to find for the non-moving party," summary judgment for the moving party is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In FLSA exemption cases, the employer must establish by a preponderance of the evidence that the position in question falls within one of the FLSA's enumerated exemptions. *See Mullins v. Target Corp.*, No. 09-cv-7573, 2011 WL 1399262, at *4 (N.D. Ill. Apr. 13, 2011). As established above and below, the undisputed material facts clearly support Hat World's application of the administrative exemption. Accordingly, Hat World is entitled to judgment as a matter of law.

**B.    RLPIs Satisfy The Administrative Exemption Under The FLSA.**

The FLSA exempts from overtime those employed in a "bona fide executive, administrative, or professional capacity." *See* 29 U.S.C. § 213(a)(1). To qualify under the administrative exemption, an employee (1) must be compensated on a salary or fee basis at a rate of not less than $455 per week; (2) have as his or her primary duty the performance of office or non-manual work directly related to the management or general business operations of the employer; and (3) have a primary duty that includes the exercise of discretion and independent judgment with respect to matters of significance. *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.200(a). Plaintiff and Opt-in Plaintiffs meet all three requirements and, therefore, are properly exempt from the overtime provisions of the FLSA under the administrative exemption.

*1.    RLPIs Were Paid The Appropriate Salary.*

Hat World has established that RLPIs meet the salary basis test. "An employee is paid on a "salary basis" if he regularly receives during each pay period on a weekly (or less frequent) basis a predetermined amount constituting all or part of his compensation." 29 C.F.R. § 541.602(a). There is no dispute that Plaintiff and Opt-in Plaintiffs were paid on a salary basis well in excess of the $455 per week. *See* FN 5, *supra*. Thus, element one of the administrative exemption is met.

2.    *RLPIs' Primary Duty Was To Perform Non-manual Work
Directly Related To Hat World's General Business Operations.*

Hat World has also established that RPLIs serve Hat World's general business operations with non-manual work as their primary duty. *See* FN 8, *supra*. Indeed, the second requirement is that the employee's primary duty must be the performance of office or non-manual work "directly related to the management or general business operations of the employer." *See* 29 C.F.R. § 200(a)(2). "To meet this test, 'an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.'" *See Mullins,* 2011 WL 1399262, at *4 (quoting 29 C.F.R. § 541.200(a)); *see also Blanchar v. Standard Ins. Co.*, 736 F.3d 753 (7th Cir. 2013) (finding that employees who perform work that is ancillary to the employer's production activity satisfies the second prong of the administrative exemption test); *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 577 (7th Cir. 2012)*; Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 872 (7th Cir. 2008).

Several district courts have determined that positions similar to Hat World's RLPI satisfy the second requirement of the administrative exemption. In *Mullins*, a court examined an investigator position nearly identical to Hat World's RLPI position, and concluded that the administrative exemption was lawfully applied. *Mullins*, 2011 WL 1399262, at *8. The investigator in that case "analyzed data submitted by stores, identified possible investigations of theft, and conducted investigations." *Id.* at *5. The court concluded that these duties "assisted in 'servicing' Target's retail operations," not by contributing to the service that Target offers to the public (retail sales), but, by "investigating and preventing theft and fraud." *Mullins*, 2011 WL 1399262, at *5.

12

In *Bradford*, a court examined yet another loss prevention position nearly identical to Hat World's RLPI position, finding its "primary duty was to investigate and prevent shrink in his district, and that his primary duty involved non-manual work." *See Bradford v. CVS Pharmacy, Inc.,* No. 12-cv-1159, 2016 WL 6462053, at *4 (N.D. Ga. Nov. 1, 2016). There, the loss prevention employee was responsible for investigating causes of shrink in retail stores in his area. *Id.* at *4. In particular, this exempt employee was engaged in:

- Attempting to determine the root causes of losses;
- Helping develop solutions to shrink;
- Meeting with district managers to go over audit results;
- Representing CVS in various legal matters; and
- Utilizing a corporate training program to train field and store management on loss prevention.

*Id.*

In *Juback*, another court examined a third loss prevention position nearly identical to Hat World's RLPI position, whose primary duties included conducting loss prevention investigations that yielded economic benefit to Radio Shack and improved retail operations. *See Juback v. Radioshack Corp.*, No. 08-cv-768, 2009 WL 1259990, at *2-3 (M.D. Fla. May 6, 2009).

Like *Mullins*, *Bradford* and *Juback*, Hat World RLPIs clearly perform non-manual tasks that assist Hat World in its retail operations stores. *See* FNs 8 & 9, *supra*. These tasks include helping to reducing shrink, auditing for policy and procedure compliance, analyzing data and identifying threats—all ancillary to retail sales. *See* FNs 8 & 9, *supra*.

In addition to *Mullins*, *Bradford* and *Juback*, the U.S. Department of Labor ("DOL") lends further support to Hat World's treatment of RLPIs, finding as exempt employees engaged primarily in:

> analyzing inventory results, allocating store Loss Prevention resources to successfully reduce inventory shortage, focusing prevention activities on high shortage departments, identifying paperwork control weaknesses and

> implementing procedures to correct them, conducting audits for compliance and ensuring store follow-up on price accuracy initiatives, reviewing cash discrepancies to keep the store within allowable guidelines, identifying cash registers with unacceptable shortages, and regularly reviewing loss prevention exception reports for signs of dishonesty directly relates to the functional areas of accounting, auditing, and quality control discussed in 29 C.F.R. § 541.201(b) . . . interviewing all loss prevention candidates, conducting and supervising training . . . on a continual basis, and providing direction . . . [and] [b]y ensuring training standards for associates regarding emergency procedures, robbery, fire, etc.

Wage & Hour Division Opinion Letter FLSA2006-30, 2006 WL 2792444, at *3 (Sept. 8, 2006). In this case, it is undisputed that RLPIs perform every one of the exempt tasks that the DOL finds to satisfy the administrative exemption. *See* FNs 11-32, *supra*. Plaintiff and Opt-in Plaintiffs admit that they engaged in these tasks as RLPIs. *See* FNs 47 & 52, *supra*. They admit that individual resolution of shrink was their primary expectation. *See* FNs 35-37. They not only admit that decision-making was part of the RLPI job description, but that they were good at it. *See* FNs 41-43. In one year, RLPI Wagner obtained nearly 50 confessions amounting to $122,000 in resolved case value.[58] In one case, RLPI Marshall collected a promissory note for $12,600.[59] RLPIs are consistently engaged in non-manual work implementing a program for loss prevention and shortage control for Hat World. There is no genuine issue of fact that RLPIs meet the second prong of the administrative exemption.

3. *RLPIs Exercise Discretion And Independent Judgment With Respect To Matters Of Significance.*

The undisputed facts also demonstrate that RLPIs routinely exercised discretion and independent judgment with respect to matters of significance. Generally, "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible

---

[58] ECF No. 109-13 at 20-21 (Wagner Dep. at p. 29 line 9 – p. 30 line 6); ECF No. 109-14 at 34 (Wagner Dep. Ex. 10).

[59] ECF No. 109-8 at 30-31 (Marshall Dep. at p. 90 line 11 – p. 91 line 13); ECF No. 109-9 at 5-13 (Marshall Dep. Ex. 6).

courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a); *Verkuilen v. Mediabank, LLC*, No. 09 C 3527, 2010 WL 3003860, at *2 (N.D. Ill. July 27, 2010) (explaining that courts in the Seventh Circuit have "examined whether the employee's duties involved comparing and evaluating possible courses of conduct and acting or making a decision after considering the various possibilities."). The exercise of discretion and independent judgment implies a level of authority to make independent choices, but this requirement does not prevent employers from supervising, reviewing, revising, or even reversing an employee's actions. *See*, *e.g.*, 29 C.F.R. § 541.202(c); *Roe-Midgett*, 512 F.3d at 873 (a decision "need not be final or otherwise immune from review" in order to meet the discretion and independent judgment requirement). The Department of Labor makes clear that:

> [E]mployees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review.

29 C.F.R. § 541.202(c). To wit, "[t]he decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action." *Id.; see also Blanchar,* 736 F.3d at 758 ("Though Blanchar lacked final decision-making authority, his work involved a great deal of discretion and independent judgment.").

Finally, "matters of significance" refer to the level of importance or consequence of the work performed. 29 C.F.R. § 541.202; *Schaefer-LaRose*, 679 F.3d at 577 (determining that sales representatives exercised discretion and independent judgment in regards to matters of significance and were properly classified as exempt employees). All three district courts to review loss prevention positions similar to the RLPI have granted summary judgment to the employer and determined that these positions exercise discretion and independent judgment as to matters of

15

significance. *Mullins*, 2011 WL 1399262, at *7; *Bradford*, 2016 WL 6462053, at *6; *Juback*, 2009 WL 1259990, at *3.

Here, RLPIs had discretion in selecting cases to reach loss prevention and shortage control objectives in their region.[60] Each worked remotely, set his or her own schedule, and did not have direct daily supervision from a supervisor.[61] They communicated with their supervisors via email or the phone, and it was possible that a supervisor would not respond for days.[62] Given that RLPIs did not have unlimited time or resources, they prioritized their cases and could not follow up on every potential loss or fraud.[63] RLPI Watson, for example, generally audited stores with high shrink before auditing stores that had not been audited in a while.[64] RLPIs were empowered to determine the actions necessary to resolve any loss, theft, or fraud.[65] RLPIs picked cases based on their interpretation of data.[66] RLPIs also decided when it was necessary for them to open a case.[67] And, indeed, they opened, planned, and implemented an investigation without receiving permission from their supervisor.[68]

---

[60] ECF No. 109-8 at 111 (Marshall Dep. at p. 219, lines 7-11); ECF No. 109-6 at 21 (Heidenreich Dep. at p. 39, lines 5-6); *id.* at 24-25 (Heidenreich Dep. at p. 42 line 11 – p. 43 line 9); ECF No. 109-11 at 9 (Miller Dep. Ex. 26).

[61] ECF No. 109-8 at 111 (Marshall Dep. at p. 219, lines 4-6); ECF No. 109-5 at 6-7 (Hammer Dep. at p. 9 line 8 – p. 10 line 7).

[62] ECF No. 109-13 at 80-81 (Wagner Dep. at p. 120 line 18 – p. 121 line 24).

[63] ECF No. 109-6 at 20-21 (Heidenreich Dep. at p. 38 line 13 – p. 39 line 4).

[64] ECF No. 109-17 at 6 (Watson Dep. at p. 16, lines 16-23).

[65] ECF No. 109-8 at 86 (Marshall Dep. at p. 178, lines 7-14); ECF No. 109-9 at 22-33 (Marshall Dep. Ex. 7); ECF No. 109-13 at 47-50 (Wagner Dep. at p. 81 line 24 – p. 84 line 4); ECF No. 109-14 at 36-38 (Wagner Dep. Ex. 21).

[66] ECF No. 109-10 at 29-30 (Miller Dep. at p. 46 line 22 – p. 47 line 6).

[67] ECF No. 109-2 (Hammer Decl. ¶ 11(B)).

[68] ECF No. 109-6 at 68 (Heidenreich Dep. at p. 92, lines 15-21).

RLPIs reviewed exception reports to determine if, based on the situation and evidence, they deemed an investigation was warranted.[69] If they decided to open an investigation, they decided what information was required, what witnesses to interview, and when to interview.[70] To resolve loss, theft, or fraud, Plaintiffs utilized specific skills, including Excel.[71] For example, RLPI Ward offered co-workers customized spreadsheets to analyze data in investigations, without being instructed to do so.[72] And, after having conducted an investigation, the RLPIs used their discretion and independent judgment to reach different conclusions.[73] As RLPI Marshall admits:

> Q: So one RLPI could be doing an investigation and conclude that an employee's behavior was negligent and you could be conducting the same investigation, the same facts, and conclude that the employee's behavior was not negligent; right?
>
> A: Yes.[74]

Further illustrative of their discretion and independent judgment, RLPIs:

- Reviewed audit results with store management and explained how to follow policies and how the policies worked.[75]
- Sent out summaries of investigations containing recommendations, such as whether Hat World could attempt to collect civil penalties.[76]
- Trained new employees on how to complete their job, including on effective interviewing techniques.[77]
- Recommended employees to become auditors.[78]

---

[69] ECF No. 109-6 at 6-8 (Heidenreich Dep. at p. 21 line 10 – p. 23 line 21); *id.* at 17 (Heidenreich Dep. at p. 35, lines 17-22).

[70] ECF No. 109-13 at 46-48 (Wagner Dep. at p. 80 line 24 – p. 82 line 24); ECF No. 109-14 at 36-38 (Wagner Dep. Ex. 21); ECF No. 109-8 at 30-31 (Marshall Dep. at p. 90 line 11 – p. 91 line 12); ECF No. 109-9 at 5-13 (Marshall Dep. Ex. 6).

[71] ECF No. 109-15 at 64-66 (Ward Dep. at p. 143 line 16 – p. 145 line 11).

[72] ECF No. 109-15 at 64-66 (Ward Dep. at p. 143 line 16 –p. 145 line 11).

[73] ECF No. 109-8 at 52-53 (Marshall Dep. at p. 127 line 1 – p. 128 line 8).

[74] ECF No. 109-8 at 52 (Marshall Dep. at p. 127, lines 15-20).

[75] ECF No. 109-6 at 35-36 (Heidenreich Dep. at p. 53 line 15 – p. 54 line 17).

[76] ECF No. 109-11 at 10-13 (Miller Dep. Ex. 27).

[77] ECF No. 109-17 at 39-40 (Watson Dep. at p. 56 line 16 – p. 57 line 10).

[78] ECF No. 109-8 at 44-46 (Marshall Dep. at p. 106 line 24 – p. 108 line 10).

- Recommended that employees did not have the skills to become an auditor.[79]
- Recommended policy changes to comply with Canadian standards.[80]

Plaintiffs even sought recommendations from each other. When an RLPI, had trouble resolving a case themselves, they would at times seek another RLPI's opinion because a "different style or opinion" could be more effective.[81]

Discretion and independent judgment was also clearly laid out for RLPIs as an expectation in their Performance Plans. *See* FNs 40-44, *supra*. Plaintiff and Opt-In Plaintiffs were evaluated not only on their ability to recover money and conduct audits, but also on their decision-making, managing work, and adaptability. *See id.* RLPIs had authority and exercised discretion and judgment in loss prevention and shortage control, and summary judgment is appropriate.

Plaintiff and Opt-in Plaintiffs may attempt to point to the use of manuals and guidelines as contrary to a determination that RLPIs exercise independent judgment or discretion, but this argument has no merit. *See* 29 C.F.R. § 541.704; *Roe-Midgett v. CC Servs., Inc.*, No. 04-cv- 4051 DRH, 2006 WL 839443, at *7 (S.D. Ill. Mar. 29, 2006), *aff'd*, 512 F.3d 865 (7th Cir. 2008); *see also Lutz v. Huntington Bancshares, Inc.*, 815 F.3d 988, 996 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 96. Nor does the use of computer software itself establish a lack of independent judgment or discretion. *Roe-Midgett*, 512 F.3d at 875. Employees involved in loss prevention and shortage control may use training, directives, and performance reviews that may guide conduct. This is true, because loss prevention investigators do not merely apply established procedures and techniques. *Mullins*, 2011 WL 1399262, at *8 (N.D. Ill. Apr. 13, 2011). The loss prevention investigator is not just a fact-gatherer. *Id.* at *5, 8. Instead, she takes the data and "compare[s] and evaluate[s] possible

---

[79] ECF No. 109-18 at 12 (Watson Dep. Ex. 17).

[80] ECF No. 109-13 at 54 (Wagner Dep. at p. 88, lines 4-11).

[81] ECF No. 109-10 at 69 (Miller Dep. at p. 93, lines 13-18).

courses of conduct and ma[kes] decisions after considering the possibilities." *Mullins*, 2011 WL 1399262, at *8. The investigator reviews and analyzes data and makes a judgment about whether data or a pattern warranted further investigation. *Id.* at *6.

Although RLPIs have procedures for audits and investigations, which include the use of computer software, the audits and investigations require far more than data entry. Once the data is entered into Hat World software, RLPIs still need to analyze the data to identify weaknesses and assess discrepancies.[82] Just as the argument that an investigator is a fact-gather was not sufficient to survive summary judgment in *Mullins*, here too, any argument that an RLPI is an inventory counter is not sufficient to survive summary judgment.

Plaintiffs also cannot defeat the administrative exemption because of poor performance. Here, four of the Plaintiffs were warned or disciplined for failure to effectively perform. After receiving previous warnings, Miller was terminated for poor job performance.[83] Ward received his first warning because he had not conducted investigations or interviews in a timely, consistent, and successful manner.[84] He received a final written warning because of his inability to "reduce or control shrink."[85] Ward was ultimately terminated for dishonesty.[86] Heidenreich failed to meet expectations by failing to investigate and resolve price overrides.[87] These employees' failures to meet job expectations (as outlined in their performance plans) or an employer's efforts to manage and improve this poor job performance does not change the exempt status of the position.

---

[82] ECF No. 109-6 at 31-32 (Heidenreich Dep. at p. 49 line 18 – p. 50 line 5); *id.* at 45 (Heidenreich Dep. at p. 63, lines 10-19); ECF No. 109-10 at 37 (Miller Dep. at p. 56, lines 18-23); ECF No. 109-11 at 5-6 (Miller Dep. Ex. 9).

[83] ECF No. 109-10 at 49-50 (Miller Dep. at p. 72 line 14 – p. 73 line 6).

[84] ECF No. 109-15 at 97-98 (Ward Dep. at p. 201 line 11 – p. 202 line 2); ECF No. 109-16 at 33-34 (Ward Dep. Ex. 7).

[85] ECF No. 109-1 at 43-45 (Campbell Decl. Ex. G).

[86] ECF No. 109-1 at 8 (Campbell Decl. ¶ 21).

[87] ECF No. 109-7 at 11-13 (Heidenreich Dep Ex. 9).

Ultimately, RLPIs performed exempt duties, and their poor performance is insufficient to raise a genuine issue of material fact.

In this case, the undisputed evidence establishes that the RLPIs' primary duty of loss prevention and shortage control involves the exercise of discretion and independent judgment regarding matters of significance. The third element of the administrative exemption is met. RLPIs are exempt from the FLSA's overtime requirements.

### C.  RLPIs Satisfy The Administrative Exemption Under The State Of Washington Minimum Wage Act ("MWA").

Summary judgment should also be granted against RLPI Ward's misclassification claim and related wage payment claims under Washington law. Like the FLSA, the MWA exempts from overtime those employed in a bona fide administrative capacity. *See* Wash. Rev. Code § 49.46.010(3)(c). To satisfy the exemption, Hat World similarly must prove that Ward (1) received a salary of not less than $250 per week; (2) performed non-manual field work directly related to Hat World's management policies; (3) exercised discretion and independent judgment; and (4) worked under only general supervision. *See* Wash. Admin. Code § 296-128-520; *see also* L & I Administrative Policy ES.A.9.4. Critically, when construing provisions of the MWA, the Supreme Court of Washington considers interpretations of comparable provisions of the Fair Labor Standards Act of 1938 as persuasive authority. *Inniss v. Tandy Corp.*, 141 Wash. 2d 517, 524 (2000). Thus, as set forth above, Ward's employment as a Hat World RLPI meets the administrative exemption. And, because Ward was exempt from overtime provisions, he was paid in full. His wage payment and wage deduction claims fail as well. Summary judgment should be granted in full.

20

## IV.     Conclusion

Plaintiffs were properly classified as exempt employees. Plaintiff and Opt-in Plaintiffs (1) were compensated on a salary or fee basis at a rate of not less than $455 per week; (2) had as their primary duty the performance of office or non-manual work directly related to the management or general business operations of the employer; and (3) ad a primary duty that includes the exercise of discretion and independent judgment with respect to matters of significance. Hat World is entitled to judgment as a matter of law.

Dated: December 14, 2018                          Respectfully submitted,

                                                  HAT WORLD, INC.

                                                  /s/ John C. McIlwee
                                                  One of Its Attorneys

                                                  Joel Griswold
                                                  John C. McIlwee
                                                  Bonnie Keane DelGobbo
                                                  Baker & Hostetler LLP
                                                  191 N. Wacker Dr., Suite 3100
                                                  Chicago, IL 60606-1901
                                                  T: (312) 416-6200
                                                  F: (312) 416-6201
                                                  jcgriswold@bakerlaw.com
                                                  jmcilwee@bakerlaw.com
                                                  bdelgobbo@bakerlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of Hat World's Motion for Summary Judgment was served upon counsel of record using the CM/ECF system for the United States District Court for the Southern District of Indiana on December 14, 2018.

/s/ John C. McIlwee
John C. McIlwee
